# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**May 23, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **B.S.**

**No. 15-1115** (Kanawha County 11-JA-225)


## MEMORANDUM DECISION


Petitioner Mother A.C., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's July 27, 2015, order terminating her parental rights to B.S. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Sharon K. Childers, filed a response on behalf of the child supporting the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights because she successfully completed her improvement period and there were less restrictive alternatives available.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2013, the DHHR filed an abuse and neglect petition alleging that petitioner and the father continually exposed B.S. to domestic violence and drug use and distribution in the home; failed to protect B.S. from domestic violence and drug activity; and failed to provide B.S. with proper food, clothing, supervision, and housing. The DHHR also alleged that petitioner and the father were unemployed and unable to provide for B.S. without help from others, and failed to provide B.S. with a safe and stable home. The DHHR further alleged that petitioner failed to protect B.S. from abuse and continued to choose her relationship with the father over B.S.'s welfare. The circuit court entered an order filing the petition and placing temporary custody of B.S. with the DHHR.

In November of 2013, the circuit court held a preliminary hearing. Neither petitioner nor the father attended the hearing in person, but were represented by counsel. At the close of the hearing, the circuit court found that B.S. was in imminent physical danger; there was no

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

1

reasonably available alternative to B.S.'s removal from the home; and continuation in the home was contrary to B.S.'s best interests. B.S. was later placed with her maternal grandmother.

In March of 2013, the circuit court held an adjudicatory hearing wherein petitioner stipulated to the domestic violence in the home and in B.S.'s presence. The circuit court accepted her stipulation and adjudicated petitioner an abusing parent. The circuit court granted the guardian's motion to have petitioner drug screened before she left the courthouse. Petitioner was ordered to attend parenting classes, adult life skills classes, domestic violence counseling, and submit to random drug screening. The circuit court also ordered that petitioner's services be provided separately because of the domestic violence between the parents. The circuit court granted the DHHR's motion that the child's placement remain with the maternal grandmother.

In May of 2014, the circuit court held a hearing and granted petitioner a post-adjudicatory improvement period and supervised visitation with B.S. The circuit court also granted the DHHR discretion to increase supervised visitation and/or institute unsupervised visitation.

In December of 2014, the circuit court held a review hearing on petitioner's post-adjudicatory improvement period. The circuit court noted that petitioner continued to comply with the terms and conditions of her improvement period. After the hearing, the DHHR submitted a circuit court summary which indicated that petitioner was complaint with services but that she had submitted several "diluted" drug screens and tested positive for oxycodone, oxymorphone, and alcohol. In May of 2015, the circuit court conducted another review of petitioner's improvement period. Petitioner did not appear in person but was represented by counsel. At the review, the DHHR provided the circuit court with a summary that indicated that there was an incident in April of 2015 between petitioner and the father during an unsupervised visit with B.S. According to the summary, the father struck petitioner, screamed at her, and killed the family's small dog, all in B.S.'s presence. At the close of the review, petitioner, through her counsel, made an oral motion for supervised visitation. The DHHR and the guardian objected to the motion and the circuit court denied the motion. Subsequent to the review hearing, the DHHR and the guardian recommended the termination of petitioner's improvement period, visits with B.S., and parental rights.

In July of 2015, the circuit court held a dispositional hearing. A Child Protective Service ("CPS") worker testified that he responded to petitioner's call regarding the April of 2015 domestic violence incident. The CPS worker testified that petitioner reported to him that the father had killed the dog in front of her and B.S. He also testified that he observed petitioner with scratches on her neck and face, and that some of the scratches were "red and probably bleeding from before." He testified that petitioner told him that she was "scared and needed help." Petitioner testified that she and the father got into a verbal argument and she did not know what happened to the dog. She also testified that she learned from her months of services and believed that she handled the April of 2015 incident appropriately. Petitioner testified that B.S. had "always been safe" in the home and she requested that the circuit court dismiss the case and return custody of B.S. to her and the father. Petitioner admitted that she resumed living with the father and it was her desire to remain a couple. At the close of the evidence, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could substantially be corrected in the near future because petitioner failed to take the appropriate steps

to remedy the circumstances which led to the petition's filing. The circuit court further found that termination of petitioner's parental rights was in B.S.'s best interest. By order entered on July 27, 2015, the circuit court terminated petitioner's parental rights to B.S. It is from this order petitioner now appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). On appeal, petitioner argues that the circuit court erred in terminating her parental rights because she successfully completed her improvement period.

Regarding the successful completion of an improvement period, we have held that

[a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991). According to the record on appeal, the circuit court did not find that petitioner successfully completed her improvement period. Despite petitioner's argument that she participated in all services and completed domestic violence treatment, the evidence supports the circuit court's finding that during her improvement period she repeatedly exposed B.S. to domestic violence, chose her relationship with the father over B.S.'s safety and well-being, and could not implement any of the education or tools she received through services. Based on the evidence before it, the circuit court correctly determined that petitioner did not successfully complete her improvement period.

Additionally, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future.

Pursuant to West Virginia Code § 49-4-604(c)(3), there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

The record demonstrates that the domestic violence incident in April of 2015 occurred after petitioner participated in services. Initially, petitioner left the father after the incident but reunited with him shortly thereafter, despite having the opportunity to live at her parents' residence with B.S. As such, the evidence supports the circuit court's findings that the domestic violence between petitioner and the father continued throughout the course of her improvement period and, despite completing a domestic violence program, petitioner continued to engage in a domestic violence relationship. The evidence also supports the circuit court's determination that petitioner could not implement any of the education or tools she received through services and continued to knowingly expose B.S. to a dangerous living environment.

Moreover, the circuit court correctly terminated petitioner's parental rights upon its finding that that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect and that termination was in B.S.'s best interest. In accordance with West Virginia Code § 49-4-604(b)(6), upon such a finding, the circuit court is directed to terminate petitioner's parental rights.

Petitioner also argues that the circuit court erred in terminating her parental rights because there were less restrictive alternatives available. Petitioner contends that it makes "the most sense" to order B.S.'s permanent placement with the grandmother without terminating petitioner's parental rights. We disagree. Regarding less restrictive alternatives, we have held that

> courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements.

Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Here, the circuit court was presented with sufficient evidence to make this finding. Simply put, petitioner continued to engage in an abusive relationship with the father, failed to protect B.S. from domestic violence, failed to implement any of her services, failed to participate in random drug screens, and failed to participate in all the circuit court proceedings. Thus, considering the evidence before it, the circuit court correctly terminated petitioner's parental rights.

4

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 27, 2015, order is hereby affirmed.

                                                                          Affirmed.

**ISSUED**: **May 23, 2016**


**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II